FILED
CLERK, U.S. DISTRICT COURT

9/20/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_\_CD\_\_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 2:22-cr-00424-MEMF |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 371: Conspiracy to Pass False and Fraudulent Papers Through Customhouse; 21 U.S.C. §§ 1904(c)(2), 1906(a)(1): Conspiracy to Engage in Transactions or Dealings in Properties of a Specially Designated Narcotics Trafficker; 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| GHACHAM, INC., and MOHAMED DAOUD GHACHAM, aka "Moe Ghacham," | |
| Defendants. | |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.  Defendant GHACHAM, INC., was a clothing wholesaler incorporated in the State of California in 1997 and headquartered in the city of Paramount.  Defendant GHACHAM, INC., conducted business

under names such as "Platini," "Platini Jeans," "Platini Jeans Cougar," and "Platini Signature."

2.   Defendant MOHAMED DAOUD GHACHAM, also known as "Moe Ghacham" ("M. GHACHAM"), was an officer of defendant GHACHAM, INC., and managed its international business affairs, which included importing merchandise, maintaining accounting records, and corresponding with customs brokers.

3.   United States Customs and Border Protection ("CBP"), an agency within the Department of Homeland Security, was responsible for enforcing the customs laws of the United States, including the collection of duties, taxes, and fees owed to the United States by those who import merchandise into the United States.  Duties were generally set forth in a Harmonized Tariff Schedule of the United States, which was publicly disseminated pursuant to 19 U.S.C. § 1202 and 19 C.F.R. § 152.11.

4.   In the case of merchandise to be imported into the United States, no more than a week before the expected arrival of the merchandise at a U.S. port and no later than 10 days after arrival, the importer of record or consignee, or customs broker filing on behalf of either party, was required to file entry documents for the merchandise with CBP pursuant to 19 C.F.R. § 142.12(b).  These documents required specific information relating to the merchandise, such as an accurate description of the merchandise, the purchase price, the terms of sale, and all costs and services determined by law to be dutiable.  Entry documents for many entries included a CBP Form 7501 "Entry Summary," which contained the final invoice purchase price.  CBP relied on entry documents, including the stated value of

the import, to assess the proper duties, taxes, and fees for the imported merchandise.

B.   OBJECT OF THE CONSPIRACY

5.   Beginning no later than July 2011, and continuing to at least February 2021, defendant GHACHAM, INC., conspired with defendant M. GHACHAM and others to knowingly, willfully, and with the intent to defraud the United States make out and pass false, forged, and fraudulent invoices and other documents and papers through a United States customhouse, in violation of Title 18, United States Code, Section 545.

C.   MANNER AND MEANS OF THE CONSPIRACY

6.   The object of the conspiracy was to be accomplished, and was accomplished, in substance, as follows:

a.   Defendant M. GHACHAM and others would order garments from suppliers in China on behalf of defendant GHACHAM, INC., for the purpose of importing those garments into the United States for sale in defendant GHACHAM, INC.'s stores under the "Platini" brand.

b.   Defendants GHACHAM, INC. and M. GHACHAM would direct unindicted co-conspirators, including garment suppliers based in China, to generate both real invoices documenting the true amounts paid for the imported garments and "customs invoices" falsely reflecting lesser amounts.

c.   To reduce the customs duties CBP would assess to defendant GHACHAM, INC., defendants GHACHAM, INC. and M. GHACHAM would submit the fraudulent "customs invoices" to customs brokers and CBP and would cause false and fraudulent Entry Summaries, including false and fraudulent Forms 7501, to be submitted to CBP that understated the value of the imported garments.

   d. Defendants GHACHAM, INC. and M. GHACHAM would maintain the real invoices for their own accounting records.

  7. Between approximately July 2011 and February 2021, defendants GHACHAM, INC. and M. GHACHAM intentionally caused false and fraudulent Entry Summaries to be submitted to CBP in which they undervalued garments imported by defendant GHACHAM, INC. by approximately $32,388,015, thereby avoiding the payment of approximately $6,390,792 in customs duties.

D. <u>OVERT ACTS</u>

  8. In furtherance of the conspiracy, and to accomplish its object, on or about the following dates, defendants GHACHAM, INC. and M. GHACHAM, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

 <u>Overt Act No. 1</u>: On July 19, 2012, in an email communication, defendant M. GHACHAM directed an unindicted co-conspirator to list a false per-unit price of $3.94 for jeans when, in reality, the per-unit price was $7.87.

 <u>Overt Act No. 2</u>: On August 12, 2012, defendant GHACHAM, INC. caused an Entry Summary to be submitted to CBP that used a false per-unit price of $3.94 for imported garments.

 <u>Overt Act No. 3</u>: On June 14, 2013, in an email communication, defendant M. GHACHAM directed an unindicted co-conspirator to create a real invoice and a "customs invoice" that understated the value of the merchandise defendant GHACHAM, INC., was to import.

 <u>Overt Act No. 4</u>: On January 29, 2016, in an email communication, defendant M. GHACHAM asked an unindicted co-

conspirator to clarify the figures listed on a real invoice and a "customs invoice."

<u>Overt Act No. 5</u>:   On February 18, 2016, defendant GHACHAM, INC. caused an Entry Summary to be submitted to CBP that listed a false entered value of $22,167.20 when, in reality, the entered value of the imported garments was approximately $66,854.01.

<u>Overt Act No. 6</u>:   On June 16, 2018, in a WeChat communication, defendant M. GHACHAM directed an unindicted co-conspirator to understate the value of imported garments on a "customs invoice."

<u>Overt Act No. 7</u>:   On August 2, 2018, in a WeChat communication, defendant M. GHACHAM confirmed with an unindicted co-conspirator that the total value of imported garments was $71,423.85, but that the price listed on the "customs invoice" would be "30% of total price."

<u>Overt Act No. 8</u>:   On July 31, 2019, defendant GHACHAM, INC. caused an Entry Summary to be submitted to CBP that listed a false entered value of $28,382 when, in reality, the entered value of the imported garments was approximately $57,290.

<u>Overt Act No. 9</u>:   On September 14, 2020, defendant GHACHAM, INC. caused an Entry Summary to be submitted to CBP that listed a false entered value of $14,232 when, in reality, the entered value of the imported garments was approximately $61,392.10.

COUNT TWO

[21 U.S.C. §§ 1904(c)(2), 1906(a)(1)]

[DEFENDANT GHACHAM, INC.]

9. The United States Attorney incorporates paragraphs 1 through 4 and 6 through 8 of this Information here.

A. ADDITIONAL INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

10. The Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§ 1901-1908, 8 U.S.C § 1182 (the "Kingpin Act"), imposed economic sanctions against individuals identified by the President as significant foreign narcotics traffickers. The Kingpin Act and its implementing regulations also imposed sanctions on foreign persons designated by the Secretary of the Treasury as "specially designated narcotics traffickers" for materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker.

11. On December 12, 2007, pursuant to the Kingpin Act, the U.S. Department of the Treasury's Office of Foreign Assets Control designated Maria Tiburcia Cazarez Perez ("Maria Cazarez"), a Mexican national, as a specially designated narcotics trafficker subject to economic sanctions pursuant to the Kingpin Act based on her participation in a financial network used by Ismael "El Mayo" Zambada Garcia and Victor Emilio Cazares Salazar, whom the President had previously designated as significant foreign narcotics traffickers.

12. Defendant GHACHAM, INC., was a United States person within the meaning of the Kingpin Act.

13. On September 26, 2006, as a joint business venture, the president of defendant GHACHAM, INC. and Maria Cazarez incorporated "Platini Jeans Cougar De Mexico Sociedad de Responsabilidad Limitada de Capital Variable" ("Platini Mexico").

14. On December 12, 2007, law enforcement agents went to defendant GHACHAM, INC.'s corporate address of record. The president of defendant GHACHAM, INC., was notified that Maria Cazarez was a specially designated narcotics trafficker and that defendant GHACHAM, INC., was prohibited by law from transacting further business with her.

B. <u>CONSPIRACY TO ENGAGE IN TRANSACTIONS AND DEALINGS IN PROPERTIES OF A SPECIALLY DESIGNATED NARCOTICS TRAFFICKER</u>

15. Beginning on or about December 12, 2007, and continuing to at least on or about February 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant GHACHAM, INC., knowingly and willfully conspired with Maria Cazarez and others known and unknown to engage in transactions and deal in property of Maria Cazarez, namely, Platini Mexico, in violation of Title 21, United States Code, Section 1904(c)(1) and Title 31, Code of Federal Regulations, Part 598.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

16. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of either defendant's conviction of the offense set forth in Count One of this Information.

17. Any defendant so convicted shall forfeit to the United States of America the following:

   a. All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

   b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

18. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

8

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                          E. MARTIN ESTRADA
                          United States Attorney

*Christina Shay for SMG*

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DIANA L. PAULI
Assistant United States Attorney
International Narcotics, Money
   Laundering & Racketeering Section